IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

LAWRENCE E. COLEMAN                                                    PLAINTIFF

      v.               Civil No. 1:07-cv-01006

SHERIFF JAMES ROBINSON;
JAIL ADMINISTRATOR DAVID
OLIVER; and JAILER WILLIE REED                                         DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Lawrence E. Coleman (hereinafter "Plaintiff" or "Coleman"), filed this action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2005), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Coleman is currently incarcerated in the Arkansas Department of Correction in the East Arkansas Regional Unit located in Brickeys, Arkansas. He contends his constitutional rights were violated while he was incarcerated at the Ashley County Detention Center in Hamburg, Arkansas. Specifically, he contends his rights were violated by the conditions to which he was subjected while confined to administrative or disciplinary segregation.

Defendants filed a motion for summary judgment (Doc. 21). To assist Coleman in responding to the motion, I propounded a questionnaire (Doc. 28). Coleman filed a timely response to the questionnaire (Doc. 29) and the motion is now ready for decision.

### I. Background

Coleman was booked into the Ashley County Detention Center (ACDC) on September 6, 2006. *Plaintiff's Response* (Doc. 29) (hereinafter *Resp.*) at ¶ 1(A). He was being detained on

pending criminal charges. *Id.* at ¶ 1(B). He remained incarcerated at the ACDC until March 30, 2007. *Id.* at ¶ 2.

David Oliver was employed by the Ashley County Sheriff's Department as the jail administrator of the ACDC from January 3, 2005, until August 18, 2006. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at ¶ 1. He was re-hired as jail administrator on October 6, 2006, and worked in that capacity until December 31, 2006. *Id.* As jail administrator, Oliver was responsible for the day-to-day operation and administration of the detention center. *Resp.* at ¶ 4; *Defts' Ex.* 1 at ¶ 2.

While confined to the ACDC, Coleman was placed in segregation for disciplinary reasons. *Resp.* at ¶ 5. Oliver states that before inmates are placed in segregation for disciplinary reasons, they are notified of their violative conduct and afforded an opportunity to explain their version of the facts. *Defts' Ex.* 1 at ¶ 5.

According to Oliver, on October 23, 2006, he was notified by Jailer Willie Reed that Coleman had refused to follow the instructions Reed had given him. *Defts' Ex.* 1 at ¶ 6. Oliver asserts that on October 23rd Coleman was notified that refusing to follow the instructions of a jailer was a violation of policy and that Coleman was given an opportunity to explain his version of the facts to Oliver. *Defts' Ex.* 1 at ¶ 8.

Coleman states he was never given an opportunity to explain anything. *Resp.* at ¶¶ 6 & 9. Coleman states he was brought to Oliver's office. *Id.* at ¶ 10(A). However, according to Coleman, when he entered Oliver's office: "he tried to get me to drop the case against him and when he seen that I was not. he told me to get out his office and said I was like Ricky Watkins." *Id.* Coleman maintains he was put in segregation "for some words that we had when I first got there and he stated that I will not see the last of him." *Id.* at ¶ 10(B).

Coleman indicates Sheriff Robinson came into Oliver's office when Coleman was trying to explain himself to Oliver. *Resp.* at ¶ 17. Coleman states Sheriff Robinson walked off and said

something to Reed and Oliver and when they were through they came back to his cell and took him to "jail." *Id.*

The disciplinary segregation cells included a mattress, a stool bolted to the floor, a toilet, and sink with running tap water. *Resp.* at ¶ 11(A); *Defts' Ex.* 1 at ¶ 9. According to Defendants, the temperature in the entire ACDC is maintained at 70 degrees which is within the standards set forth by the Arkansas Jail Standards Commission. *Defts' Ex.* 1 at ¶ 9. Coleman maintains the thermostat is turned down to approximately 50 degrees and that one of the officers that worked there stated it was wrong for them to treat the prisoners like that. *Resp.* at ¶ 11(B).

While Oliver was jail administrator, he found that many of the inmates are initially very upset at being placed in disciplinary segregation and often attempt to cause harm to themselves and destroy jail property. *Resp.* at ¶ 12(A); *Defts' Ex.* 1 at ¶ 10. Incidents included inmates using their clothing to clog and flood toilets or to attempt to hang themselves or choke themselves unconscious. *Resp.* at ¶ 12(B); *Defts' Ex.* 1 at ¶ 10. For this reason, an inmate placed in disciplinary segregation had his outer garments temporarily removed until it was established that the inmate was unlikely to attempt to use his clothing to harm himself or destroy property. *Resp.* at ¶ 12(C); *Defts' Ex.* 1 at ¶ 10.

According to Defendants, during the initial period of Coleman's disciplinary segregation, his outer garments were removed until it was established he was unlikely to attempt to use his clothing to harm himself or destroy property. *Defts' Ex.* 1 at ¶ 12. After the initial period, Defendants maintain Coleman's outer garments were returned to him. *Defts' Ex.* 1 at ¶ 12.

However, Coleman maintains his outer garments were not returned to him until he was released from disciplinary segregation. *Resp.* at ¶¶ 13(A) & 13(B). When asked to describe his conditions of confinement, Coleman stated he was naked except for his shorts. *Id.* at ¶ 16. He states his mat was removed and he had no blanket with the thermostat turned to approximately 50 degrees. *Id.* His toilet tissue was taken for five days. *Id.* He was served two bologna sandwiches for each meal with the meat so thin he could see through it–approximately 1/16 of an inch thick. *Id.*

-3-

Coleman indicates he filed grievances because he was placed in disciplinary segregation and also because of his living conditions while confined in segregation. *Resp.* at ¶ 14. He also states the jailer, a Ms. Mary Jane, signed a statement saying "she believed it to Mr. David Oliver and I never received a copy." *Id.* Coleman did not suffer any physical injury because of the conditions under which he was confined during the disciplinary segregation. *Resp.* at ¶ 15.

## II.  Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## III.  Discussion

Defendants have now moved for summary judgment. First, Defendants argue Coleman's claims are barred by the physical injury requirement of the Prison Litigation Reform Act (PLRA). Second, Defendants contend Coleman's claims fail because he received procedural Due Process when Defendant Oliver conducted a hearing after Coleman was put on notice he had violated jail

policy.  Finally, Defendants contend Coleman's claims fail because he has presented no evidence that he was deprived of a single, identifiable human need.

Inopposition, Coleman first maintains he did submit grievances and one of the jailers, Ms. Mary Jane, even signed a statement advising Oliver that he had.  Coleman, however, indicates he never received a copy of the statement.  Second, while Coleman indicates he was called into Oliver's office, he maintains he was never given a chance to explain anything.  Finally, Coleman maintains he was taken to the hole, stripped down to his shorts, the thermostat turned down to approximately 50 degrees, his toilet tissue taken from him for five days, and he was fed two bologna sandwiches for each meal every day.  He maintains these actions violated his constitutional rights.

### A.  The Physical Injury Requirement of the PLRA

Codified as 42 U.S.C. § 1997e(e), section 803(d) of the Prison Litigation Reform Act of 1996 (PLRA), provides as follows:  "No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Defendants argue that Coleman does not allege that he suffered any physical injury and thus § 1997e(e) bars his action.  I disagree.  Section 1997e(e) merely limits a prisoner's recovery in the absence of physical injury.  It does not bar the cause of action.  *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)(discussing § 1997e(e)'s limitation on damages and its application to all prisoner lawsuits).  Even in the absence of a physical injury, a Plaintiff may recover nominal damages and seek declaratory and injunctive relief where appropriate.  *Id.*  Thus, although Coleman concedes he did not suffer any physical injuries as a result of the conditions under which he was confined, *resp.* at ¶ 15, this does not preclude him from recovering nominal damages.

### B.  Due Process

Under the Due Process Clause of the United States Constitution, a pretrial detainee may not be punished prior to an adjudication of guilt.  *See Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60

L. Ed. 2d 447 (1979).  "We [therefore] begin with the fundamental principle that a person held in confinement as a pretrial detainee may not be subjected to any form of punishment for the crime for which he is charged."  *Rapier v. Harris*, 172 F.3d 999, 1002 (7th Cir. 1999).  *See also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Pretrial detainees are presumed innocent and may not be punished.").  "However, not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense."  *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention."  *Bell*, 441 U.S. at 537.  In determining whether a particular restriction constitutes a permissible restriction or amounts to impermissible punishment, the court first asks "whether the restriction is based upon an express intent to inflict punishment."  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002)(citations omitted).  If "there is no indication of such an express intent," the court next considers "whether punitive intent can be inferred from the nature of the restriction."  *Valdez*, 302 F.3d at 1045.

In this regard, the Supreme Court in *Bell* held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Bell*, 441 U.S. at 539.  "An action may be reasonably related to a legitimate governmental purpose if an alternative purpose to which the act may rationally be connected is assignable for it and the action does not appear excessive in relation to the alternative purpose assigned."  *Robles v. Prince George's County, Maryland*, 302 F.3d 262, 269 (4th Cir. 2002)(internal citations and punctuation omitted).

In *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002), the Seventh Circuit stated:

A pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. But no process is required if he is placed in segregation not as punishment but for managerial reasons.  Suppose for example that the only vacant cell left in the jail was in the segregation ward when a new prisoner arrived; placing him in that cell would be a managerial decision.  Or suppose, . . . that a prisoner was placed under particularly restrictive conditions of confinement at the jail because he was considered a suicide risk.  Again, no hearing would be required.  Ditto if he was placed in segregation to

-6-

protect himself from other prisoners, or to protect jail staff from his violent propensities. As long as the purpose was indeed preventive rather than a punitive one, he would not be entitled to notice and a hearing. . . . In none of these cases would a hearing be practicable, or even useful, because managerial decisions do not have the character of rulings applying legal standards to facts, the kind of rulings for which adjudicative hearings are designed.

*Id.,* 286 F.3d at 438. *See Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992)("Requiring a pretrial detainee to work or be placed in administrative segregation is punishment. . . . Regardless of whether the detentions are classified as 'administrative,' if a pre-trial detainee must remain in a lock-up area if he does not work, the detention amounts to punishment.").

The Supreme Court has outlined procedures correctional facilities must follow to conduct impartial due process hearings on a disciplinary matter. *See Wolff v. McDonnell*, 418 U.S. 539, 563-66, 570, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The procedures include: written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and the reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *See also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Although Oliver asserts by affidavit that Coleman was notified that refusing to follow instructions was a violation of policy and afforded an opportunity to tell his side of the story, Coleman denies being afforded the opportunity to explain his side of the story. *See Resp.* at ¶¶ 6, 9, & 10(A). Moreover, there is nothing in the summary judgment record that suggests the Defendants complied with the requirements of Due Process by providing Coleman with written notice of the charges, a brief period to prepare, and a written statement of the evidence relied on. For instance, the record contains no disciplinary action form or similar document. I therefore find there are genuine issues of fact that preclude summary judgment in Defendants' favor on this claim.

### C. Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment.  U.S. Const. amend. VIII.  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime."  *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.  The standards against which a court measures

prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). *See also Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard applies to claims brought by pretrial detainees that prison officials failed to provide adequate food, clothing, shelter, etc.).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case.  Here, Coleman contends that he was stripped down to his shorts, his mat and blanket were taken, and he was placed in a cell where the thermostat was turned down to 50 degrees. *Resp.* at ¶ 16.  He also maintains for five days he received no toilet tissue.  *Id.*  For meals, he received two bologna sandwiches for each meal.  *Id.*  He maintains the meat on the sandwiches was so thin he could see through it.  *Id.*

It is unclear from the summary judgment record how long Coleman remained in disciplinary segregation under these conditions. The court is provided with no information on, among other things, the following:  how often Coleman was provided with an opportunity to shower; whether he was given opportunities to exercise; whether he was allowed out of the cell for any purpose during the administrative segregation; and whether his blanket and mat was returned to him at any point. I believe there are genuine issues of fact as to whether the restrictive measures used in this case deprived Coleman of the minimal civilized level of living.

### IV.  Conclusion

For the reasons stated, I recommend the Defendants' motion for summary judgment (Doc. 21) be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections**

may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 23rd day of July 2008.


/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE